Approved: _____/s/ J. McMahon_____
JAMES MCMAHON
Assistant United States Attorney

Before:     HONORABLE JUDITH C. McCARTHY
            United States Magistrate Judge
            Southern District of New York

- - - - - - - - - - - - - - - - - -x
                                    :   21mj7346
UNITED STATES OF AMERICA            :
                                    :   SEALED
        - v. -                      :   COMPLAINT
                                    :
CONSTANCE KOEPER,                   :   Violation of
                                    :   18 U.S.C. § 1343
                Defendant.          :
                                    :
- - - - - - - - - - - - - - - - - -x

SOUTHERN DISTRICT OF NEW YORK, ss.:

   DANIEL J. GABEL, being duly sworn, deposes and says that he is a Postal Inspector with the United States Postal Inspection Service, and charges as follows:

### COUNT ONE

   From on or about September 23, 2020 to on or about September 30, 2020, in the Southern District of New York and elsewhere, CONSTANCE KOEPER, the defendant, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations and promises, willfully and knowingly, and for the purpose of executing such scheme and artifice, did transmit and cause to be transmitted by means of wire communications in interstate commerce, writings, signs, signals, pictures, and sounds, to wit, KOEPER caused, and attempted to cause, unauthorized transfers of money from a brokerage account controlled by another to a brokerage account controlled by her and sent communications in interstate commerce to further the scheme.

   (Title 18, United States Code, Section 1343)

The bases for my knowledge and the foregoing charge are, in part, as follows:

1. I am a Postal Inspector with the United States Postal Inspection Service and I have been personally involved in the investigation of this matter. I have been a Postal Inspector for more than four years. During my career, I have worked on cases involving white-collar fraud such as mail, wire, and bank fraud and health care fraud. This affidavit is based upon my conversations with law enforcement agents and others and my examination of reports and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

2. I have learned the following from my review of documents maintained by Wells Fargo Advisors:

   a. The Estate of R.I. maintains a brokerage account at Wells Fargo Advisors. This brokerage account is controlled by F.I., who serves as the executor of the Estate of R.I. and is R.I.'s daughter. F.I. lives in Westchester County.

   b. The Estate of R.K. also maintains a brokerage account at Wells Fargo Advisors. This brokerage account is controlled by CONSTANCE KOEPER, the defendant. KOEPER serves as the executor of the Estate of R.K. and is R.K.'s daughter.

   c. F.I. and R.K. are sisters. KOEPER is F.I.'s niece. When R.K. was alive, she and F.I. owned businesses and real estate together. F.I. has told Wells Fargo Advisors that R.K. therefore had tax returns and other documents containing F.I.'s personal information, such as her Social Security number. Since R.K.'s death, KOEPER presumably has access to those documents and, therefore, F.I.'s personal information. KOEPER presumably also has access to information regarding the account maintained by the Estate of R.I. at Wells Fargo Advisors, as R.K. was the executor of the Estate of R.I., and controlled the account, prior to her death.

d. On or about September 24, 2020, a Client Associate at Wells Fargo Advisors emailed a Letter of Authorization form that, when executed, would authorize periodic cash transfers not to exceed $300,000 from the Estate of R.I. account to the Gmail address [F.I.'s misspelled full name]@gmail.com. Approximately 35 minutes later, the Client Associate received a return email that included the Letter of Authorization apparently signed by F.I.

e. Later that day, $246,674.70 was transferred from the Wells Fargo Advisors account maintained by the Estate of R.I. to the Wells Fargo Advisors account maintained by the Estate of R.K.

f. On or about September 25, 2020, a woman purchased cashier's checks totaling more than $178,000 with funds from the account maintained by the Estate of R.K. Wells Fargo's surveillance cameras took photographs of the woman purchasing the cashier's checks. Although the woman wore a mask, I can identify her as KOEPER, whom I have met.

g. Seven of the cashier's checks, totaling $138,000, were made payable to R.B. Another cashier's check, for $40,000, was made payable to a law firm. The account maintained by the Estate of R.K. would not have had sufficient funds to fund these cashier's checks absent the September 24 transfer from the account maintained by the Estate of R.I.

h. In a notarized statement, F.I. has denied making, or authorizing, the September 24 transfer or setting up an online profile for the account maintained by the Estate of R.I.

3. I have spoken with the Wells Fargo Advisors Client Associate referenced above, who told me the following in substance and in part:

a. She is the Client Associate responsible for the accounts maintained by the Estate of R.I. and the Estate of R.K.

b. She received a call from someone claiming to be F.I. and requesting a transfer from the account maintained by the Estate of R.I. to the account maintained by the Estate of

3

R.K. The caller knew F.I.'s Social Security number and address and the Client Associate therefore believed she was speaking with F.I. The Client Associate sent the Letter of Authorization described above to the Gmail address [F.I.'s misspelled full name]@gmail.com and received it back in an email from that address apparently signed by F.I.

4. I have spoken with the Branch Manager at the Garden City, New York branch of Wells Fargo Advisors, where the accounts held by the Estate of R.I. and the Estate of R.K. are maintained. He told me the following in substance and in part:

a. F.I. is the only authorized user on the account maintained by the Estate of R.I. F.I. became the authorized user of this account after her sister, R.K., passed away. CONSTANCE KOEPER, the defendant, is the authorized user of the account maintained by the Estate of R.K.

b. KOEPER has withdrawn approximately $1 million from the account maintained by the Estate of R.K. in one year.

c. On or about September 23, 2020, a new online profile was created for the Estate of R.I. account.

d. On or about September 28, 2020, the Branch Manager called KOEPER and asked her if she knew anything about the September 24 transfer of $246,674.70 into the Estate of R.K. account. KOEPER said she was on the telephone with F.I. when the request for the transfer was made and that she withdrew the money and purchased the cashier's checks because she had bills to pay. KOEPER then hung up the phone and did not answer when the Branch Manager called her again.

e. On or about September 30, 2020, someone claiming to be F.I. called the Wells Fargo Advisors branch and requested a $100,000 transfer from the Estate of R.I. account to the Estate of R.K. account. The Wells Fargo Advisors employee told the caller that the Branch Manager had to approve the transfer. The Branch Manager then called KOEPER, who hung up on him.

5. On or about April 26, 2021, I interviewed CONSTANCE KOEPER, the defendant, who stated in substance and in part:

    a. She made the transfer of approximately $246,000 from the Estate of R.I. account to the Estate of R.K. account. She impersonated her aunt, F.I., to do so. She did not have permission to make the transfer. She believed her aunt would have given her permission to make the transfer had she spoken with her aunt but that her uncle did not allow her to speak to her aunt. She intends to pay F.I. back. She does not want F.I. to know about the transfer.

    b. She called and emailed Wells Fargo from the Residence Inn in White Plains to make the transfer. She created the account [F.I.'s misspelled full name]@gmail.com at the Residence Inn. She signed her aunt's name to the Letter of Authorization and emailed it to Wells Fargo Advisors.

    c. She made the transfer because she owes people money. The cashier's checks payable to R.B. were to pay for spiritual candles. She purchases a lot of spiritual candles from R.B. She uses the candles for spiritual cleansing.

  6. On or about March 1, 2021, a representative of Google LLC advised me in writing that Google did not maintain Gmail servers in New York State between September 1, 2020 and October 15, 2020.

  WHEREFORE, deponent prays that CONSTANCE KOEPER, the defendant, be arrested, and imprisoned or bailed as the case may be.

_____
DANIEL J. GABEL
Postal Inspector

Sworn to before me this
26 day of July , 2021

_____
HONORABLE JUDITH C. McCARTHY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK